UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DIANE MARIE BRUNAUGH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 4:18-cv-1023-SPM |
| | ) |
| | ) |
| | ) |
| ANDREW M. SAUL,[1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION**

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of Defendant Andrew M. Saul, the Commissioner of Social Security, denying the application of Plaintiff Diane Marie Brunaugh ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 10). Because I find the decision denying benefits was supported by substantial evidence, I will affirm the Commissioner's denial of Plaintiff's application.

I. **PROCEDURAL BACKGROUND**

On February 19, 2015, Plaintiff applied for DIB and SSI, alleging that she had been unable to work since June 15, 2012. (Tr. 189). Her application was initially denied. (Tr. 96). On September

---

[1] On June 4, 2019, Andrew M. Saul became the Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), Commissioner Saul is substituted for Nancy A. Berryhill as defendant in this action. No further action needs to be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g).

1

4, 2015, Plaintiff filed a Request for Hearing by Administrative Law Judge ("ALJ"). (Tr. 102). On November 7, 2017, the ALJ issued an unfavorable decision. (Tr. 10-23). Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's Appeals Council, which was denied on April 23, 2018. (Tr. 1-5). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

With regard to Plaintiff's testimony, work history, and medical records, the Court accepts the facts as provided by the parties in their respective statements of facts and responses. The Court will address specific facts related to the issues raised by Plaintiff as needed in the discussion below.

## II. STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. § 404.1520(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c); *McCoy*, 648 F.3d at 611. At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. § 404.1520(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 404.1520(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his or her] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. §§ 404.1520(e). At Step Four, the Commissioner determines whether the claimant can return to his or her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.* At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine

whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c)(2); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that she is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 404.1560(c)(2).

### III. THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff last met the insured status requirements of the Act on September 30, 2015, and that she did not engage in substantial gainful activity during the period from her alleged onset date of June 15, 2012, through her date last insured of September 30, 2015.[2] (Tr. 13). The ALJ found that Plaintiff had the severe impairments of degenerative disc disease, carpal tunnel syndrome, bipolar disorder, and anxiety, but that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (Tr. 13-15). The ALJ found that through the date last insured,

> [Plaintiff] had the residual functional capacity to perform a range of light work as defined in 20 C.F.R §§ 404.1567(b) and 416.967(b). She is able to lift and carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk six hours in an eight-hour workday and sit six hours in an eight-hour workday. She occasionally is able to balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, but never climb ladders, ropes, or scaffolds. She frequently is able to handle, finger, or feel. The claimant is limited to simple, routine tasks with minimal changes in job setting

---

[2] The ALJ noted that the medical records "reflect that the claimant reported working well after her alleged onset date. However, as the claimant did not have this income reported, there is no clear evidence of whether this work was performed at the level of substantial gainful activity. As the decision can be reached on other grounds, the undersigned defers further investigation of this issue, and finds that the claimant has not engaged in substantial gainful activity after her alleged onset date." (Tr.13).

and duties. She should have no contact with the general public, and only occasional contact with coworkers and supervisors.

(Tr. 15).

The ALJ found that through the date last insured, Plaintiff was unable to perform any past relevant work.[3] (Tr. 21). However, relying on the testimony of a vocational expert, the ALJ found that through the date last insured, there were other jobs existing in significant numbers in the national economy that Plaintiff could have performed, such as cleaner (*Dictionary of Occupational Titles* ("*DOT*") No. 323.687-014), mail clerk (*DOT* No. 209.687-026), and assembler (*DOT* No. 726.687-010). (Tr. 22-23). The ALJ concluded that Plaintiff was not under a disability, as defined in the Act, at any time from June 15, 2012, the alleged onset date, through September 30, 2015, the date last insured.

### IV. DISCUSSION

Plaintiff challenges the ALJ's decision, asserting that her RFC is not supported by substantial evidence because the record contains neither medical evidence that addresses Plaintiff's physical ability to function in the workplace, nor a medical opinion regarding Plaintiff's functional physical limitations, and the ALJ failed to develop the record by obtaining such an opinion. Because Plaintiff's challenge to the ALJ's decision focuses on her physical impairments rather than her mental impairments, the Court will likewise focus on the evidence relevant to her physical symptoms.

#### A. Standard for Judicial Review

The decision of the Commissioner must be affirmed if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole. *See* 42 U.S.C.

---
[3] Plaintiff's past relevant work included being a cook in a restaurant and a nursing assistant in a skilled nursing facility. (Tr. 87).

5

§ 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). "Substantial evidence 'is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012) (quoting *Moore*, 572 F.3d at 522). In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Id.* However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

### B. Medical Evidence in the Fully Developed Record Supports the RFC

"When assessing a claimant's RFC, the ALJ must consider all relevant evidence in the record." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007). However, "[b]ecause a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by 'some medical evidence' of the claimant's ability to function in the workplace." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (*quoting Steed v. Astrue*, 524 F.3d 872, 875 (8th Cir. 2008)); *see also Julin v. Colvin*, 826 F.3d 1082, 1088 (8th Cir. 2016) ("A claimant's RFC is a medical question, and some medical evidence must support the RFC determination."). Therefore, while the claimant "bears the burden of proving disability and providing medical evidence as to the existence and severity of an impairment," *Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013), "[a]n ALJ is required to

6

obtain additional medical evidence if the existing medical evidence is not a sufficient basis for a decision." *Nader v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994). *See also Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004) (an ALJ may be required to develop the record by, among other things, re-contacting medical sources or ordering consultative evaluations, but only if the available evidence does not provide an adequate basis for determining the merits of the disability claim). The ALJ's duty to develop the record in a social security disability hearing is triggered only when a crucial issue is undeveloped. *See Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005). Furthermore, in order to show the record was not adequately developed, the claimant must show not just a failure to develop necessary evidence, but also unfairness or prejudice resulting from that failure. *See Haley v. Massanari*, 258 F.3d 742, 749-50 (8th Cir. 2001). "[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Id. Accord Haley v. Massanari*, 258 F.3d 742, 749–50 (8th Cir. 2001).

Plaintiff argues that the ALJ's decision was not supported by substantial evidence, because her RFC assessment was not supported by "some" medical evidence. She also suggests that the ALJ should have further developed the record by obtaining a medical opinion regarding Plaintiff's functional physical limitations. The Court disagrees. Based on a careful review of the record, the Court finds that the ALJ's RFC assessment was supported by substantial evidence, including medical evidence, addressing Plaintiff's ability to function in the workplace, and the ALJ was under no obligation to further develop the record.

First, the ALJ's RFC assessment is supported by numerous medical records regarding Plaintiff's allegedly disabling physical conditions, her pain management, and her conservative course of treatment, which collectively provide substantial detail about her ability to perform work

7

related activities, and fail to provide strong support for Plaintiff's allegations of disabling symptoms and limitations. *See Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005) (holding that it was proper for the ALJ to consider unremarkable or mild objective medical findings as one factor in assessing disability); *see also Aguiniga v. Colvin*, 833 F.3d 896, 902 (8th Cir. 2016) (allegations of disability that are inconsistent with the objective medical evidence weighs against the credibility of the claimant's allegations); *Black v. Apfel*, 143 F.3d 383, 386-87 (8th Cir. 1998) (a conservative course of treatment is inconsistent with complaints of debilitating pain).

The record shows that Plaintiff had a history of chronic lower back pain. However, she repeatedly indicated that her symptoms were alleviated by applying heat, and were well managed by her medications, including Flexeril and Vicodin at first, as well as Gabapentin and Hydrocodone later in her course of treatment. (Tr. 352, 353, 371, 381, 387, 392, 398, 403). *See Hensley v. Colvin*, 829 F.3d 926, 933 (8th Cir. 2016) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling."). Furthermore, although she often experienced tenderness of the lumbar spine, physical examinations showed Plaintiff had full flexion, full extension, full lateral bending, full rotation, normal straight leg raises, normal gait and station, normal sensation and reflexes, normal range of motion, and full motor strength. (Tr. 319, 324, 361, 362, 457, 462, 466, 472, 515-16).

The medical record indicates that in January 2014, Plaintiff had her first MRI of the lumbar spine, the results of which showed only mild degenerative disc disease, unremarkable comus medullaris, mild anterior disc bulging, left lateral spinal stenosis at L3-L4, bilateral spinal stenosis at L4-L5, with all other findings generally unremarkable. (Tr. 413). Plaintiff's second MRI, conducted in April 2015, revealed mostly unchanged results, and showed less extensive disc bulging than indicated in the previous MRI. (Tr. 417-18). At a doctor's visit in February 2017,

Plaintiff reported experiencing no back pain, no muscle pain or weakness, and no fatigue, and the doctor recommended that she undertake aerobic exercise for thirty minutes per day for four days per week. (Tr. 461-62). Plaintiff underwent a third MRI of the lumbar spine in March 2017, which again indicated largely unchanged results, and showed mild spondylosis and minimal diffuse disc bulges. (Tr. 470). On April 10, 2017, Plaintiff consulted with neurosurgery specialist, Dr. Bassam A. R. Hadi, ("Dr. Hadi") who noted that her recent MRI showed "very mild to moderate stenosis at L4-L5 but otherwise multilevel degenerative disc disease." (Tr. 472). Dr. Hadi noted that Plaintiff had not had any physical therapy, chiropractic treatment, or injections in the past, and he recommended that she "be treated with conservative therapy," which he thinks "will be all that is necessary permanently." (Tr. 472). Finally, in connection with her carpal tunnel syndrome, Plaintiff underwent a surgical carpal tunnel release in May 2017, which completely resolved the symptoms in her left hand. (Tr. 18-19, 515). At that time, Plaintiff reported some continued numbness in her right hand, but she was scheduled to have the same surgery performed on her right hand two weeks after the hearing before the ALJ. (Tr. 18-19, 515).

Second, Plaintiff's characterization of the limitations imposed by her physical conditions, as well as her self-reported daily activities of living, support the RFC assessment. For example, on January 17, 2014, when visiting her primary care physician, Dr. Ann Schumacher ("Dr. Schumacher"), Plaintiff reported that her back pain only moderately limited her activities, and was alleviated by heat and medication. (Tr. 361). Additionally, in her function report and at the hearing, Plaintiff indicated that she was independent with her personal care, was able to prepare simple meals, do laundry, drive a car, and that she frequently babysat her three-year-old niece. (Tr. 20, 49, 254-55). Furthermore, the record indicates that Plaintiff continued to work long after her

alleged date of onset.[4] (Tr. 13, 17, 18, 353, 357, 367, 433). For example, in July 2013, over one year after the alleged onset date, she presented to her primary care physician, Dr. Schumacher, complaining of back pain. (Tr. 353). Plaintiff told Dr. Schumacher that she had gotten a new job in a kitchen, but the heavy lifting involved was not helping her back pain, and she wanted to switch to a morning shift that required less lifting. (Tr. 353). Later, in October 2013, Plaintiff reported to Dr. Schumacher that she was "still working at her job and considering another job vs. going on disability," and her doctor advised her to keep working. (Tr. 357). In April 2014, Plaintiff once again reported that her new job was worsening her back pain. (Tr. 367). In September 2015, over three years after her alleged onset date, Plaintiff told Dr. Schumacher that she was "working night shifts now to avoid any heavy lifting." (Tr. 433).

Given the above, the Court finds that the ALJ's RFC assessment was supported by substantial evidence, including medical evidence, and it will not disturb that decision. *See Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007) ("This court will not substitute its opinion for the ALJ's, who is in a better position to gauge the credibility and resolve conflicts in evidence.").

With regard to the ALJ's asserted duty to further develop the record by obtaining a functional assessment of her limitations, Plaintiff correctly notes that the record contains no opinion evidence from any medical source[5] with regard to Plaintiff's physical ability to function

---

[4] As noted *supra*, although the ALJ found that Plaintiff had not engaged in substantial gainful activity after her alleged onset date, she also noted that the medical records "reflect that the claimant reported working well after her alleged onset date. However, as the claimant did not have this income reported, there is no clear evidence of whether this work was performed at the level of substantial gainful activity. As the decision can be reached on other grounds, the undersigned defers further investigation of this issue, and finds that the claimant has not engaged in substantial gainful activity after her alleged onset date." (Tr.13).

[5] Plaintiff also notes that there is one opinion in the record that addresses her physical limitations, but it belongs to a single decision maker ("SDM"), and as such, may not be relied on by the ALJ as a medical source. Under the social security regulations, an SDM assumes initial responsibility for processing a claimant's application for disability. *See* 20 C.F.R. §404.906. Because SDMs are laypersons, they are not qualified to provide medical evidence regarding a claimant's impairments, and thus, as Plaintiff correctly states, their opinions may not be relied on as medical source opinions by the ALJ. *See* 20 C.F.R. § 404.1513; 20 C.F.R. § 404.1527(a)(1). Plaintiff argues that if the ALJ had relied on the SDM's opinion as medical evidence in formulating her RFC, this would constitute reversible error. However,

in the workplace. As Defendant points out, however, the absence of such medical opinion evidence does not require remand. *See Myers v. Colvin*, 721 F.3d 521, 526-27 (8th Cir. 2013) (there is no requirement that an RFC finding be supported by a specific medical opinion); *see also Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012) (same); *Johnson v. Astrue*, 628 F.3d 991, 995 (8th Cir. 2011) (In the absence of medical opinion evidence, "medical records prepared by the most relevant treating physicians [can] provide affirmative medical evidence supporting the ALJ's residual functional capacity findings.").

The Eighth Circuit has held that mild or unremarkable objective medical findings and other evidence may constitute sufficient medical support for an RFC finding, even in the absence of any medical opinion evidence directly addressing Plaintiff's ability to function in the workplace. *See, e.g.*, *Stringer v. Berryhill*, 700 F. App'x 566, 567-68 (8th Cir. 2017) (affirming a finding that the claimant was not disabled; noting, "While there were no medical opinions, it appears the medical evidence would have supported even a less restrictive RFC"); *Hensley v. Colvin*, 829 F.3d 926, 929-34 (8th Cir. 2016) (upholding the ALJ's finding that the plaintiff could perform sedentary work despite the absence of specific medical opinion evidence; finding "adequate medical evidence of [the plaintiff's] ability to function in the workplace" where the plaintiff's treating physician found that the plaintiff was in no acute distress and had a normal knee exam and gait; another physician found that his knee assessment was normal and he had "full knee range, good lower limb and spinal flexibility"; and the plaintiff reported greatly reduced or nonexistent knee and back pain after treatment); *Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008) (upholding the ALJ's finding that the plaintiff could perform light work based on largely mild or normal objective findings regarding her back condition, despite the fact that the medical evidence was " 'silent' with

---

as the ALJ did not make a single reference to the SDM's opinion in her decision, the Court find this argument speculative and without merit.

regard to work-related restrictions such as the length of time she [could] sit, stand and walk and the amount of weight she can carry"). *See also Thornhill v. Colvin,* No. 4:12–CV–1150 (CEJ), 2013 WL 3835830, at *12 (E.D. Mo. July 24, 2013) (holding that medical records supporting the ALJ's statement that "physical examinations have been essentially unremarkable and reveal normal independent gait with no evidence of spine or joint abnormality or range of motion limitation or muscle tenderness" constituted medical evidence in support of a finding that the claimant could perform medium work).

In this case, like the above cases, the record contains largely mild, moderate, or otherwise unremarkable objective findings during the relevant period. With the medical record adequately developed, the ALJ was not required to seek opinions from Plaintiff's treating physicians or order a consultative examination.

V. **CONCLUSION**

For the reasons set forth above, the Court finds that the decision of the Commissioner is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

                                                                                            /s/ Shirley Padmore Mensah
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 23rd day of September, 2019.